**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X

KATHLEEN ROHAN,

                    Plaintiff,

          - against -

SIMON PROPERTY GROUP, INC., d/b/a
SMITH HAVEN MALL,

                    Defendant.

---------------------------------------------------------------X

Case No.:

**COMPLAINT**

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

      KATHLEEN ROHAN ("Plaintiff"), by and through her attorneys, PHILLIPS & ASSOCIATES, ATTORNEYS AT LAW PLLC, against SIMON PROPERTY GROUP, INC., d/b/a SMITH HAVEN MALL ("Defendant"), alleges upon knowledge as to herself and her own actions and upon information and belief as to all other matters as follows:

### NATURE OF THE CASE

1.     Plaintiff complains pursuant to the discrimination and retaliation provisions of: (i) the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623, et seq. ("ADEA"); (ii) The Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. ("ADA"); and (iii) The New York State Human Rights Law, New York State Executive Law, § 296, et seq. ("NYSHRL"), and seeks damages to redress the injuries Plaintiff suffered as a result of being discriminated against by Defendant on the basis of Plaintiff's age and disability.

### JURISDICTION AND VENUE

2.     Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§ 1331 and 1343.

3.     The Court has supplemental jurisdiction over Plaintiff's claims brought under state law

pursuant to 28 U.S.C. § 1367.

4.  Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) as the acts complained of occurred therein.

**PROCEDURAL PREREQUISITES**

5.  Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunities Commission ("EEOC").

6.  Plaintiff received a Notice of Right to Sue from the EEOC, dated March 7, 2024, with respect to the herein charges of discrimination.  A copy of the Notice is annexed hereto as Exhibit "A".

7.  This action is being commenced within 90 days of receipt of said Right to Sue.

**PARTIES**

8.  Plaintiff, KATHLEEN ROHAN ("Plaintiff"), is a fifty-one-year-old female and a resident of the State of New York.

9.  Plaintiff is a person with medical impairments that constitutes a disability under the law: Long COVID-19.

10.  Plaintiff's disability interferes with her ability to sleep, walk, maintain balance, sit, bend, lift, work, and perform manual tasks, and affects her major bodily functions of her respiratory, cardiovascular, and cognitive systems.

11.  At all relevant times, Plaintiff was capable of performing her job with or without a reasonable accommodation.

12.  At all times material, Plaintiff was and is a "person" and "employee" entitled to protection as defined by the ADEA, ADA, and NYSHRL.

13. At all times material, SIMON PROPERTY GROUP, INC., d/b/a SMITH HAVEN MALL ("Defendant"), was and is a Domestic real estate investment trust that invests in shopping malls, outlet centers, and community/lifestyle centers.

14. Defendant is headquartered at 225 West Washington Street, Indianapolis, Indiana 46204, but maintains an office at 399 Park Avenue, 29th Floor, New York, New York 10022.

15. At all times material, Plaintiff worked in Defendant's Smith Haven Mall, located at 313 Smith Haven Mall, Lake Grove, New York 11755.

16. At all times material, Defendant employed twenty or more employees and is therefore an "employer" within the meaning of the ADEA, ADA, and NYSHRL.

17. At all times material, Plaintiff was employed by Defendant.

## MATERIAL FACTS

18. Plaintiff began working for Defendant as a full-time Office Administrator in April 2014.

19. Plaintiff's duties and responsibilities as an Office Administrator included filing documents, organizing files, answering telephone calls, handling administrative tasks, maintaining accounts payable ledgers, maintaining accounts receivable ledgers, and selling gift cards.

20. Plaintiff did her job well and was recognized as an exemplary employee. She received positive written performance evaluations.

21. As such, throughout Plaintiff's employment, Plaintiff received yearly salary increases of approximately two to three percent every March.

22. Plaintiff's annual salary was $59,716.00.

23. At all times material, Plaintiff worked under the supervision of Manager Chris Brivio, Manager Debbie Weber ("Ms. Weber"), and Manager Matthew Boals ("Mr. Boals"), each of which had the power to hire, fire, or otherwise effect the terms, conditions, or privileges

of Plaintiff's employment.

24.    Defendant subjected Plaintiff to a hostile work environment that was permeated with ridicule, insults, discriminatory epithets/comments, threats against employment, threats of adverse employment actions, unreasonable refusals to accommodate Plaintiff, and other hostile activity.

25.    Beginning in or about November 2021, Defendant embarked on a campaign of discriminating against Plaintiff on the basis of her age as evidenced by Defendant treating Plaintiff with hostility and animosity, by isolating Plaintiff, and by Defendant referring to Plaintiff in cruel and derogatory terms based on her age.

PLAINTIFF BECOMES ILL AND IS DIAGNOSED WITH LONG COVID – A DISABLITY

26.    In August 2021, Plaintiff contracted COVID-19 and was hospitalized as a result of her symptoms.

27.    Consequently, Plaintiff went on short-term disability leave for twelve weeks.

28.    As the weeks passed, Plaintiff continued to suffer ongoing symptoms of COVID-19.

29.    Ultimately, Plaintiff was diagnosed with Long Haulers COVID-19 ("Long COVID-19").

30.    Plaintiff continued to suffer ongoing symptoms of Long COVID-19, such as body aches, fatigue, dizziness, brain fog, and shortness of breath.

31.    Also, Plaintiff begam to suffer from additional symptoms, including vertigo, high blood pressure, and heart palpitations.

32.    Nevertheless, Plaintiff returned to work and competently performed the duties of her job.

PLAINTIFF REQUESTS A REASONABLE ACCOMMODATION

33.    In November 2021, Plaintiff's symptoms increased as her body aches, fatigue, dizziness, and shortness of breath became more severe.  In addition, Plaintiff had severe headaches

and high blood pressure, and her vision worsened.  In fact, Plaintiff's symptoms became so severe that she could not drive an automobile.

34.    On November 18, 2021, Plaintiff told Mr. Boals that she suffered from Long Covid-19.

35.    Plaintiff went on to tell Mr. Boals that she was suffering from severe body aches, fatigue, dizziness, and shortness of breath.

36.    As such, Plaintiff asked Mr. Boals if she could take a week off from work to address her symptoms and work on recovery.

37.    Mr. Boals denied Plaintiff's request outright and instead threatened Plaintiff's employment by screaming at her that she had, "*No job protection!*"

38.    Plaintiff was shocked and offended by Mr. Boals' offensive comment.  Further, Mr. Boals' response was confounding to Plaintiff as she could not fathom why her manager would not allow her time off to attend to her disability.

39.    Knowing she needed time from work because of her disability, Plaintiff filed a complaint with Defendant's Human Resources Department ("HR") by e-mail, and then followed-up with a phone call the next day.

40.    Specifically, Plaintiff told HR that she asked Mr. Boals if she could take a week off from work because her symptoms from her disability had become severe.  Plaintiff further stated that, in response, Mr. Boals denied her request and threatened Plaintiff's employment by telling Plaintiff she had, "*No job protection.*"

41.    However, no one from HR followed up with Plaintiff.  As such, Plaintiff's complaint was futile.

42.    In fact, at that time, HR did not ask for information about her disability, did not ask her to fill out any forms for an accommodation request, and did not explain to Plaintiff, or provide

Plaintiff with, any of its policies regarding medical leave or accommodation requests.

43. As a result, and notwithstanding that Plaintiff was very ill at that time, Plaintiff felt compelled to work most of the week that she requested off because she feared Defendant would terminate her employment if she did not do so.

PLAINTIFF IS SUBJECTED TO AGE-BASED HOSTILE WORK ENVIRONMENT

44. Around the same time period, November 2021, Mr. Boals began mercilessly harassing Plaintiff because of her age.

45. For instance, on multiple occasions, Mr. Boals told Plaintiff that she should "*stop working*" because of her age and claimed that Plaintiff was "*too old*" to continue to work.

46. Further, on multiple occasions, Mr. Boals also called Plaintiff a "*crusty old nail.*"

47. Plaintiff was greatly offended, upset, and shocked by these degrading and discriminatory comments.

48. In or about December 2021, Mr. Boals told Plaintiff, specifically, that she was "*too old to work*" and "*too sick to work.*"

49. Consequently, Plaintiff complained to HR about Mr. Boals' aegist and discriminatory comments and the fact that Mr. Boals told her she had no job protection.  Plaintiff lodged this complaint by e-mail and then followed-up by leaving a telephone message.

50. Once again, no one from HR followed up with Plaintiff or provided Plaintiff with findings of any investigation into her complaint of discrimination. As such, Defendant simply dismissed Plaintiff's concerns.

51. In the months that followed, Mr. Boals frequently screamed at Plaintiff in a degrading, offensive, and belligerent manner, and repeatedly made offensive and rude statements regarding Plaintiff's age, such as calling Plaintiff a "*crusty old nail*" and telling Plaintiff to

have her "*rich husband take care of [her]."*

52.    After receiving stellar performance reviews in years past, in March 2022, just months after Plaintiff lodged complaints of discrimination, Mr. Boals gave Plaintiff a pretextual and retaliatory negative performance review.

## PLAINTIFF SEEKS DISABILITY LEAVE AND IS SUBJECTED TO CONTINUING HARASSMENT AND DISCRIMINATION

53.    In early February 2023, Plaintiff was having ongoing health concerns with Long-COVID-19, which included vertigo, heart palpitations, and hypertension, and began experiencing overwhelming anxiety and depression.

54.    As such, in early February 2023, Plaintiff contacted HR and requested to go on short-term disability leave.

55.    On or about February 9, 2023, HR approved Plaintiff's request for short-term disability leave.

56.    Subsequently, Plaintiff's doctors provided Defendant with monthly documented requests to extend Plaintiff's short-term disability leave due to Plaintiff's disability and health impairments.

57.    As such, Plaintiff was approved for short-term disability leave until July 24, 2023.

58.    However, in or about June 2023, Defendant harassed Plaintiff to return to work when Plaintiff was too sick to do so, under threat of termination.  In that regard, HR contacted Plaintiff and ordered her to report to work by June 27, 2023 or else Plaintiff's employment would be considered "abandoned," resulting in Plaintiff's termination.

59.    Indeed, despite Plaintiff's legally protected and approved leave of absence, Defendant threatened to terminate Plaintiff if she did not return to work.

<u>PLAINTIFF IS ILLEGALLY TERMINATED</u>

60.    Ultimately, on June 27, 2023, while still on legally protected leave, Defendant terminated

Plaintiff's employment.

61.    Defendant was and/or should have been aware of its obligations to maintain Plaintiff's

position and to restore her to her previous, or a comparable, title upon her return from

medical leave.

62.    Instead, Defendant hired a person to replace Plaintiff who was about *twenty years* younger

than Plaintiff.

<u>DEFENDANT'S HISTORY OF DISCRIMINATION AND FAILURE TO REMEDY MR.
BOALS' HARASSMENT</u>

63.    Notably, Mr. Boals has a history of similar discriminatory and harassing behavior against

his employees.

64.    For example, Plaintiff was aware that Mr. Boals targeted, harassed, and discriminated

against Chief Engineer James Frank ("Mr. Frank") based on Mr. Frank's age and

disabilities.

65.    In addition, Plaintiff was aware that Mr. Boals targeted, harassed, and discriminated against

Ellen Guditis ("Ms. Guditis") based on Ms. Guditis' age.

66.    Indeed, Mr. Boals would also frequently refer to Ms. Guditis as a "*crusty old nail.*"

67.    In fact, Mr. Boals went so far as to purchase an "award" for Ms. Guditis that stated, "*Crusty
Old Nail*" and hung it near Ms. Guditis' desk.

<u>DEFENDANT IS LEGALLY LIABLE FOR DISCRIMINATION</u>

68.    As described herein, Defendant discriminated against Plaintiff on the basis of her age as

evidenced by Defendant treating Plaintiff with hostility and animosity; by making

offensive and degrading ageist comments to her, such as calling Plaintiff a "crusty old

nail," telling Plaintiff she should "stop working" because of her age, and claiming Plaintiff was "too old" to work; by issuing Plaintiff a retaliatory negative evaluation; by terminating Plaintiff's employment; and by replacing Plaintiff with someone who was about twenty years younger than her.

69.    As described herein, Defendant discriminated against Plaintiff on the basis of her disability as evidenced by Defendant treating Plaintiff with hostility and animosity, by contacting Plaintiff multiple times when she was home sick, by harassing Plaintiff to return to work when Plaintiff was too sick to do so, by commenting to Plaintiff that she was "too sick to work," by issuing Plaintiff a retaliatory negative evaluation, and by terminating Plaintiff while Plaintiff was on a legally protected leave of absence.

70.    Plaintiff engaged in protected activities by complaining to HR, by requesting reasonable accommodations, and by taking legally protected leaves of absence.

71.    Indeed, Plaintiff made at least nine complaints regarding Defendant's discriminatory treatment of her.

72.    Plaintiff lodged those complaints in or about November 2021, December 2021, June 2022, July 2022, August 2022, December 2022, January 2023, February 2023, and June 2023.

73.    As described herein, immediately after Plaintiff engaged in protected activities, Defendant retaliated against Plaintiff by creating a more hostile work environment, by issuing Plaintiff a retaliatory negative evaluation, and by terminating Plaintiff's employment.

74.    Defendant's discriminatory conduct against Plaintiff was a continuing violation of Plaintiff's rights under the laws herein.

75.    As a result of the acts and conduct complained of herein, Plaintiff has suffered, and will continue to suffer, economic loss, special damages, future pecuniary loss, loss of

employment, loss of employment opportunities, loss of benefits, loss of enjoyment of life, exacerbation of pre-existing conditions, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

76.     Defendant's conduct has been malicious, willful, wanton, and conducted with full knowledge of the law. As such, Plaintiff demands punitive and/or liquidated damages.

**FIRST CAUSE OF ACTION**
**AGE DISCRIMINATION UNDER THE ADEA**

77.     Plaintiff repeats and realleges each and every allegation in the paragraphs above.

78.     The ADEA, 29 U.S.C. § 623(a), provides that:

> It shall be unlawful for an employer:
>
> (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
>
> (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or
>
> (3) to reduce the wage rate of any employee in order to comply with this chapter.

79.     Defendant discriminated against Plaintiff on the basis of her age in violation of the ADEA by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy discriminatory and disparate treatment of Plaintiff based on her age.

80.     As described herein, Defendant discriminated against Plaintiff on the basis of her age as evidenced by Defendant treating Plaintiff with hostility and animosity; by making offensive and degrading ageist comments to her, such as calling Plaintiff a "crusty old

nail," telling Plaintiff she should "stop working" because of her age, and claiming Plaintiff was "too old" to work; by issuing Plaintiff a retaliatory negative evaluation; by terminating Plaintiff's employment; and by replacing Plaintiff with someone who was about twenty years younger than her.

81.    As a result of the acts and conduct complained of herein, Plaintiff has suffered, and will continue to suffer, economic loss, special damages, future pecuniary loss, loss of employment, loss of employment opportunities, loss of benefits, loss of enjoyment of life, exacerbation of pre-existing conditions, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

82.    Defendant's unlawful discriminatory actions constitute malicious, willful, and wanton violations of the ADEA, for which Plaintiff is entitled to an award of liquidated damages.

83.    Plaintiff is entitled to the maximum allowable damages under the ADEA.

### SECOND CAUSE OF ACTION
### RETALIATION UNDER THE ADEA

84.    Plaintiff repeats and realleges each and every allegation in the paragraphs above.

85.    The ADEA, 29 U.S.C. § 623(d), provides:

> It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because such individual, member or applicant for membership has opposed any practice made unlawful by this section, or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

86.    Plaintiff engaged in protected activities by complaining to HR.

87. As described herein, immediately after Plaintiff engaged in protected activities, Defendant retaliated against Plaintiff by creating a more hostile work environment, by issuing Plaintiff a retaliatory negative evaluation, and by terminating Plaintiff's employment.

88. Defendant would not have retaliated against Plaintiff but for Plaintiff's complaints of discrimination.

89. Such retaliatory treatment would dissuade any reasonable employee from engaging in a protected activity.

90. As a result of the acts and conduct complained of herein, Plaintiff has suffered, and will continue to suffer, economic loss, special damages, future pecuniary loss, loss of employment, loss of employment opportunities, loss of benefits, loss of enjoyment of life, exacerbation of pre-existing conditions, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

91. Defendant's unlawful retaliatory actions constitute malicious, willful, and wanton violations of the ADEA, for which Plaintiff is entitled to an award of liquidated damages.

92. Plaintiff is entitled to the maximum allowable damages under the ADEA.

**THIRD CAUSE OF ACTION**
**DISABILITY DISCRIMINATION UNDER THE ADA**

93. Plaintiff repeats and realleges each and every allegation in the paragraphs above.

94. Title 42 of the ADA, Chapter 126, Subchapter I, Section 12112, Discrimination states:

> (a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

95. Plaintiff's diagnosis of Long COVID-19 constitutes a disability and health impairment that substantially limits one or more of Plaintiff's major life activities within the meaning of § 12102(1)(A) of the <u>ADA</u>, such as sleeping, walking, maintaining balance, sitting, bending, lifting, and performing manual tasks, and affects her major bodily functions of her respiratory, cardiovascular, and cognitive systems.

96. Plaintiff was and is a qualified individual who could perform the essential functions of her employment with or without a reasonable accommodation, as defined by § 12111(8) of the <u>ADA</u>.

97. Defendant discriminated against Plaintiff on the basis of her disability in violation of the <u>ADA</u> by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy discriminatory and disparate treatment of Plaintiff based on her disability.

98. In addition, and as described herein, Defendant discriminated against Plaintiff on the basis of her disability as evidenced by Defendant treating Plaintiff with hostility and animosity, by contacting Plaintiff multiple times when she was home sick, by harassing Plaintiff to return to work when Plaintiff was too sick to do so, by commenting to Plaintiff that she was "too sick to work," by issuing Plaintiff a retaliatory negative evaluation, and by terminating Plaintiff while Plaintiff was on a legally protected leave of absence.

99. As a result of the acts and conduct complained of herein, Plaintiff has suffered, and will continue to suffer, economic loss, special damages, future pecuniary loss, loss of employment, loss of employment opportunities, loss of benefits, loss of enjoyment of life, exacerbation of pre-existing conditions, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-

esteem and self-confidence, and emotional pain and suffering.

100. Defendant's unlawful discriminatory actions constitute malicious, willful, and wanton violations of the <u>ADA</u>, for which Plaintiff is entitled to an award of punitive damages.

101. Plaintiff is entitled to the maximum allowable damages under the <u>ADA</u>.

**FOURTH CAUSE OF ACTION
RETALIATION UNDER THE ADA**

102. Plaintiff repeats and realleges each and every allegation in the paragraphs above.

103. The <u>ADA</u> prohibits retaliation, interference, coercion, or intimidation against an employee who engages in a protected activity.

104. 42 <u>U.S.C.</u> § 12203(a) and (b) provide:

> (a) Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

> (b) Interference, coercion, or intimidation. It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

105. Plaintiff engaged in protected activities by complaining to HR, by requesting reasonable accommodations, and by taking legally protected leaves of absence.

106. As described herein, immediately after Plaintiff engaged in protected activities, Defendant retaliated against Plaintiff by creating a more hostile work environment, by issuing Plaintiff a retaliatory negative evaluation, and by terminating Plaintiff's employment.

107. Defendant would not have retaliated against Plaintiff but for Plaintiff's complaints of discrimination, requests for reasonable accommodations, and the need for legally protected

leaves of absence.

108.    Such retaliatory treatment would dissuade any reasonable employee from engaging in a protected activity.

109.    As a result of the acts and conduct complained of herein, Plaintiff has suffered, and will continue to suffer, economic loss, special damages, future pecuniary loss, loss of employment, loss of employment opportunities, loss of benefits, loss of enjoyment of life, exacerbation of pre-existing conditions, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

110.    Defendant's unlawful retaliatory actions constitute malicious, willful, and wanton violations of the ADA, for which Plaintiff is entitled to an award of punitive damages.

111.    Plaintiff is entitled to the maximum allowable damages under the ADA.

**FIFTH CAUSE OF ACTION**
**AGE DISCRIMINATION UNDER THE NYSHRL**

112.    Plaintiff repeats and realleges each and every allegation in the paragraphs above.

113.    New York State Executive Law § 296(1)(a) provides that:

> It shall be an unlawful discriminatory practice: For an employer or licensing agency, because of an individual's **age**, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

114.    As described herein, Defendant discriminated against Plaintiff on the basis of her age in violation of the NYSHRL by creating, fostering, condoning, accepting, ratifying, and/or

negligently failing to prevent or remedy discriminatory and disparate treatment of Plaintiff based on her age.

115. As described herein, Defendant discriminated against Plaintiff on the basis of her age as evidenced by Defendant treating Plaintiff with hostility and animosity; by making offensive and degrading ageist comments to her, such as calling Plaintiff a "crusty old nail," telling Plaintiff she should "stop working" because of her age, and claiming Plaintiff was "too old" to work; by issuing Plaintiff a retaliatory negative evaluation; by terminating Plaintiff's employment; and by replacing Plaintiff with someone who was about twenty years younger than her.

116. As a result of the acts and conduct complained of herein, Plaintiff has suffered, and will continue to suffer, economic loss, special damages, future pecuniary loss, loss of employment, loss of employment opportunities, loss of benefits, loss of enjoyment of life, exacerbation of pre-existing conditions, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

117. Defendant's unlawful discriminatory actions constitute malicious, willful, and wanton violations of the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

## SIXTH CAUSE OF ACTION
## DISABILITY DISCRIMINATION UNDER THE NYSHRL

118. Plaintiff repeats and realleges each and every allegation in the paragraphs above.

119. New York State Executive Law § 296(1)(a) provides that:

> It shall be an unlawful discriminatory practice: For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, **disability**, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to

> discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

120.   Defendant discriminated against Plaintiff on the basis of her disability in violation of the ADA by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy discriminatory and disparate treatment of Plaintiff based on her disability.

121.   In addition, and as described herein, Defendant discriminated against Plaintiff on the basis of her disability as evidenced by Defendant treating Plaintiff with hostility and animosity, by contacting Plaintiff multiple times when she was home sick, by harassing Plaintiff to return to work when Plaintiff was too sick to do so, by commenting to Plaintiff that she was "too sick to work," by issuing Plaintiff a retaliatory negative evaluation, and by terminating Plaintiff while Plaintiff was on a legally protected leave of absence.

122.   As a result of the acts and conduct complained of herein, Plaintiff has suffered, and will continue to suffer, economic loss, special damages, future pecuniary loss, loss of employment, loss of employment opportunities, loss of benefits, loss of enjoyment of life, exacerbation of pre-existing conditions, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

123.   Defendant's unlawful discriminatory actions constitute malicious, willful, and wanton violations of the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

**SEVENTH CAUSE OF ACTION**
**RETALIATION UNDER THE NYSHRL**

124.   Plaintiff repeats and realleges each and every allegation in the paragraphs above.

125. <u>Executive Law</u> § 296(7) provides that:

> [i]t shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified, or assisted in any proceeding under this article.

126. Plaintiff engaged in protected activities by complaining to HR, by requesting reasonable accommodations, and by taking legally protected leaves of absence.

127. As described herein, immediately after Plaintiff engaged in protected activities, Defendant retaliated against Plaintiff by creating a more hostile work environment, by issuing Plaintiff a retaliatory negative evaluation, and by terminating Plaintiff's employment.

128. Defendant would not have retaliated against Plaintiff but for Plaintiff's complaints of discrimination, requests for reasonable accommodations, and the need for legally protected leaves of absence.

129. Such retaliatory treatment would dissuade any reasonable employee from engaging in a protected activity.

130. As a result of the acts and conduct complained of herein, Plaintiff has suffered, and will continue to suffer, economic loss, special damages, future pecuniary loss, loss of employment, loss of employment opportunities, loss of benefits, loss of enjoyment of life, exacerbation of pre-existing conditions, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

131. Defendant's unlawful retaliatory actions constitute malicious, willful, and wanton violations of the <u>NYSHRL</u>, for which Plaintiff is entitled to an award of punitive damages.

## JURY DEMAND

132.   Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendant:

A.   Declaring that Defendant engaged in unlawful employment practices prohibited by the ADEA, ADA, and NYSHRL in that Defendant discriminated against Plaintiff on the basis of her age and disability;

B.   Awarding damages as provided by statute under the provisions of the ADEA, ADA, and NYSHRL;

C.   Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendant's unlawful discrimination, and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

D.   Awarding Plaintiff compensatory damages for injury to her reputation, loss of enjoyment of life, exacerbation of pre-existing conditions, and mental and emotional injury and distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering;

E.   Awarding Plaintiff punitive damages;

F.   Awarding Plaintiff liquidated damages;

G.   Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of this action; and

H.    Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and

proper to remedy Defendant's unlawful employment practices.

Dated:  New York, New York
        June 5, 2024

**PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC**

By:    /s/ William K. Oates, Esq.
       William K. Oates, Esq.
       45 Broadway, Suite 430
       New York, New York 10006
       T: (212) 248-7431
       F: (212) 901-2107
       woates@tpglaws.com